

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JPL:JV
F. #2022R00919

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 6, 2025

By ECF

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Thomas John Sfraga
                 Criminal Docket No. 24-194 (FB)(LB)

Dear Judge Block:

      The government respectfully submits this letter in advance of the defendant Thomas John Sfraga's sentencing, which is scheduled for Thursday, March 13, 2025, at 3 p.m. The government respectfully submits that a substantial custodial sentence within the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 41 to 51 months, is appropriate in this case.

I.    Background and Criminal Conduct

      As charged in the complaint and as outlined in the February 6, 2025 Presentence Investigation Report (the "PSR"), the defendant lived in Brooklyn, New York, and owned and operated multiple New York businesses. PSR ¶ 4. From at least 2016 to 2022, the defendant stole over $2 million from at least 17 victims by soliciting loans and investments for a series of scam transactions – purchasing, renovating and reselling homes, funding a major construction contract, and investing in a cryptocurrency "virtual wallet."[1] Id. ¶¶ 5, 7-42; March 5, 2025 PSR Addendum ("PSR Add.") ¶¶ 42A, 44, 45 and at 1. The defendant stole from friends and next-door neighbors, from the parents of children that played on teams with the defendant's child, and from his child's baseball coach. PSR ¶¶ 7, 35, 38, 39, 41 and at 11-12 (victim statements). He stole from people he met at cryptocurrency networking events and people he had known since grade school. Id. ¶¶ 36, 37, 42. He stole money gifted to a young couple for their wedding,

---

[1] Although the Information charges conduct from 2019 to 2022, the government could prove by a preponderance of the evidence that the defendant fraudulently solicited and received investments as early as 2016.

money borrowed from home equity loans, money budgeted to renovate a home, money to build a home and money that was going to be used to pay for children's tuition. Id. ¶¶ 16, 26, 33, 42 and at 12 (victim statements). He stole money from new victims to lull old victims. Id. ¶¶ 10, 12 and at 11 (victim statements). When the house of cards collapsed, he and his ex-wife offered escalating excuse after excuse. Id. ¶¶ 12, 30, 32, 34, 35. And when the excuses wore thin and he was being sued and investigated by law enforcement, the defendant skipped town and disappeared. Id. ¶ 46.

After fleeing New York, the defendant began living under a false identity in Arizona. Id. ¶ 46. Soon thereafter, an arrest warrant was issued by the Richmond County District Attorney's Office in Staten Island, New York, for grand larceny. Id. While living in Arizona, the defendant provided a false identity to Arizona law enforcement in connection with an unrelated property crime. Id. Ultimately, Arizona law enforcement discovered the defendant's true identity, learned that he had an open warrant and arrested the defendant on September 18, 2023. Id. ¶ 47. Despite the arrest, the defendant posted a cash bond of $3,600 and then fled the jurisdiction, failing to appear. Id.

On December 23, 2023, the defendant was arrested in Las Vegas, Nevada, for running out on his bill at the Wynn Casino. Id. ¶ 48. On December 24, 2023, the defendant was taken into federal custody on a warrant from this District. Id. The defendant was transported to this District and arraigned on January 22, 2024. Id.

II.   The Defendant's Guidelines Range

   A.   Offense Level Calculation

The government respectfully accepts Probation's calculation of the Adjusted Offense Level in the PSR, as set forth below:

| | |
|---|---:|
| Base Offense Level (§ 2B1.1) | 7 |
| Plus: Loss above $1,500,000 (§ 2B1.1(b)(1)(I)) | +16 |
| Plus: 10 or More Victims and Substantial Financial Hardship to One or More Victims (§ 2B1.1(b)(2)(A)) | +2 |
| Total: | 25 |

PSR ¶¶ 56-63.

Probation's calculation differs from that set forth in the plea agreement in applying a loss amount above $1,500,000, as opposed to above $550,000. PSR Add. ¶ 58. At the time of the defendant's guilty plea, the government was only aware of losses to victims totaling $1,337,700. Since the defendant's plea, however, more victims have come forward. PSR Add. at 1. For example, Victim 18 has provided information that he invested $130,000 with the defendant to buy homes in New Jersey, renovate them and then sell them for profit. PSR ¶ 49; PSR Add. ¶ 42A. As the conduct against Victim 18 and others appears as part of a common scheme undertaken by the defendant, the government agrees with Probation that it should be considered as relevant conduct, resulting in total losses of $2,031,000. See PSR ¶¶ 43-45, 49; PSR Add. ¶ 42A, 44, 45.

As the defendant accepted responsibility, through allocution, a two-level reduction is warranted pursuant to U.S.S.G. § 3E1.1(a).  PSR ¶¶ 55, 65-66.  In addition, as the defendant timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, a further one-level reduction is warranted pursuant to U.S.S.G. § 3E1.1(b).  Id.  Accordingly, the Total Offense Level is 22.  Id. ¶ 67.

B. Criminal History Calculation

The government respectfully submits that Probation's calculation of the defendant's criminal history category of I is correct.  Id. ¶¶ 69-72.

C. Applicable Guidelines Range

Based on a Total Offense Level of 22 and criminal history category of I, the Guidelines' imprisonment range is 41 to 51 months' imprisonment.  See id. ¶ 112.

As per the plea agreement, the defendant consented to the entry of a forfeiture money judgment in the amount of $1,337,700.  See id. ¶ 122.

Restitution is mandatory in the full amount of each victim's losses as determined by the Court.  18 U.S.C. §§ 3663A and 3664.  Here, the victims of the conduct charged in the information have lost $1,525,175.  See PSR Add. ¶ 51.  The government requests that the Court order restitution as set forth in the Proposed Restitution Order filed under seal.

III. A Substantial Custodial Term is Appropriate

A. Legal Standard

In United States v. Booker, the Supreme Court held that the Guidelines are advisory and not mandatory, and the Court made clear that district courts are still "require[d] . . . to consider Guidelines ranges" in determining sentences, but also may tailor the sentence in light of other statutory concerns.  543 U.S. 220, 245 (2005); see 18 U.S.C. § 3553(a).  Subsequent to Booker, the Second Circuit has held that "sentencing judges remain under a duty with respect to the Guidelines . . . to 'consider' them, along with the other factors listed in section 3553(a)." United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005).  Although the Second Circuit declined to determine what weight a sentencing judge should normally give to the Guidelines in fashioning a reasonable sentence, the court cautioned that judges should not "return to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum."  Id. at 113.

Subsequently, in Gall v. United States, 552 U.S. 38 (2007), the Supreme Court provided the proper procedure and order of consideration for sentencing courts to follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall, 552 U.S. at 49 (citation

3

omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [the Court] may not presume that the Guidelines range is reasonable. [The Court] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted).

Title 18, United States Code, Section 3553(a) provides numerous factors that the Court must consider in sentencing the defendant. These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to (a) reflect the seriousness of the offense, to promote respect for the law and to provide just punishment, (b) afford adequate deterrence to criminal conduct, (c) protect the public from further crimes of the defendant, and (d) provide the defendant with appropriate education or vocational training; (3) the kinds of sentences available; (4) the Guidelines range; (5) pertinent policy statements of the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution.

B.   Application of Law

The government respectfully submits that a substantial sentence of 41 to 51 months' imprisonment is warranted by the Section 3553(a) factors and will achieve the goals of sentencing.

1.   The Nature and Circumstances of the Offenses and the History and Characteristics of the Defendant Warrant a Substantial Custodial Sentence

A substantial custodial sentence is appropriate considering the nature and circumstances of this offense. From at least 2016 through 2022, the defendant swindled 17 victims out of over $2 million dollars in their life savings. The defendant's decision to commit this crime was deliberate and sustained, not a momentary lapse of judgment. To the contrary, he committed the crime for over six years until the excuses and lawsuits piled up—and then he fled the state.

Moreover, the offense is especially egregious because the defendant victimized those close to him and abused their trust. The defendant's victims were ordinary working- and middle-class friends, neighbors and acquaintances who trusted the defendant and counted him a friend. Victims have told the government that the defendant pitched them over years, holding himself out as a successful businessman and friend who could offer them opportunities to improve their lives and the lives of their families. See e.g., PSR ¶ 53 ("During a challenging time in my life, as I faced a difficult and costly divorce, [the defendant] and I met socially. He acknowledged my financial struggles and offered a way to help … He assured me, as a friend, that the principal amount would be guaranteed. He explained that I could reinvest the profits into new ventures to create an income stream to support me and my children, as he considered us like family.")

In addition, the defendant not only caused financial harm, he also caused intangible consequences that are far less obvious. The victims are real, hard-working people whose lives were forever changed by the defendant's crime. Financial crimes affect victims in

4

very real ways—ways that have enormous effect on their daily lives. Indeed, victims explained to the government how the defendant caused them to lose confidence in themselves and their own judgment. They blame themselves for falling victim to the defendant's lies. And they have explained how this horrible experience has caused them to be less trusting of others. These intangible consequences are unfortunate and further demonstrate just how serious the instant crimes were.

Nothing about the defendant's history or personal circumstances distinguishes him from other perpetrators of financial crimes or warrants against a substantial custodial sentence. Although the defendant's childhood was strained by his parents' divorce and his moving to Arizona with his mother, that does not excuse his crimes years later. PSR ¶¶ 77, 80. From the age of 11 until "[s]ometime in high school," he lived "on the edge of a 'very good' neighborhood," and had "'very good' schools, athletic programs, and peers." Id. ¶¶ 81, 83. He received "average grades," did not get into trouble other than for one incident, and had an opportunity to attend Arizona State University to play baseball. Id. ¶¶ 98-99.

After returning to Brooklyn as an adult, the defendant married and had two children. Id. ¶ 84. His ex-wife was "unbelievably supportive." Id. His children were healthy and participated in community teams. Id. ¶¶ 35, 53, 84. He started multiple businesses, earning as much as $100,000 annually from a construction company and a "living wage from [a] podcast business." Id. ¶¶ 102-104. From 2017 to 2018, the defendant's podcast had over one million listeners and received brand deals from advertisers. Id. ¶ 103.

Rather than militating against a substantial incarceratory sentence, the defendant's history shows that he had built a successful, happy personal and professional life. The defendant had every opportunity to enjoy a productive, law-abiding life. Instead, he chose to cheat and swindle his neighbors and friends out of their savings to support his lifestyle.

Years of evidence show that the defendant was calculating and dishonest. Accordingly, his history and character, together with the deliberate and extended nature of his fraud warrant a substantial custodial sentence.

        2.      A Substantial Custodial Sentence Appropriately Reflects the Seriousness of the Offense, Promotes Respect for the Law and Provides Just Punishment

The next factor that the Court must consider is "the need for the sentence imposed to promote respect for the law, and to provide for just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). A below-the-Guidelines sentence will not promote respect for the law or provide just punishment. In fact, it will do the opposite. Cases of this scale require significant custodial sentences. These sentences are among the best ways in which to communicate to the public that they will be protected and that the guilty will be punished.

Similarly, for a defendant to commit a crime of this length and magnitude, a sentence below the Guidelines would erode respect for the law. A below the Guidelines sentence would send an unfortunate message that these crimes are unworthy of significant punishment and that these victims are unworthy of justice.

The defendant's decision to operate his scheme for over six years warrants a sentence that conveys the seriousness of his decision to exploit the trust of victim-after-victim, friend-after-friend, year-after-year for his own benefit. Moreover, the defendant's fleeing New York, living under a false name, providing a false name to Arizona law enforcement and absconding from Arizona after being released on bond shows a lack of respect for the law. The defendant's conduct shows that—had he not been caught and transported back to New York to face his crimes—he was not remorseful and had not taken responsibility for his crimes.

Finally, it is unclear whether the defendant will ever be able to repay his forfeiture and restitution obligations—leaving him with having enjoyed the benefits of his crime without ever making his victims whole.

A substantial custodial sentence is therefore necessary to reflect the seriousness of the crime, promote respect for the law, and to make clear to the defendant that his conduct has serious consequences.

### 3. A Custodial Sentence Affords General Deterrence and Protects the Public

A Guidelines sentence is necessary to deter not only the defendant, but also other individuals from engaging in fraudulent behavior.

White collar criminals are among the most responsive to the general deterrence of a significant sentence. Unlike many of the criminals who pass through this Court, white collar criminals or those considering committing financial crimes are generally well-educated, have access to and are more acutely aware of information about white collar sentences. A significant sentence for the defendant can help protect the public by providing strong general deterrence to the next person considering participating in fraud. There is a greater need for general deterrence for fraud schemes than other crimes, because "economic and fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." See, e.g., United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting Stephanos Bibas, White–Collar Plea Bargaining and Sentencing After Booker, 47 Wm. & Mary L. Rev. 721, 724 (2005)) (internal quotation marks omitted)); United States v. Heffernan, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."); Drago Francesco, Roberto Galbiati & Pietro Vertova, The Deterrent Effects of Prison: Evidence From a Natural Experiment, 117 J. of Political Econ. 257, 278 (2009) ("Our findings provide credible evidence that a one-month increase in expected punishment lowers the probability of committing a crime. This corroborates the theory of general deterrence.").

Moreover, both the perpetrators and victims of thefts of this size may believe that the government is not interested in prosecuting these crimes. But the victims of the defendants' crimes—including working-class residents of Brooklyn and Long Island—deserve justice as much as the victims of larger million-dollar crimes. A substantial custodial sentence is necessary to deter both the defendant and other individuals from engaging in these types of crimes. A sentence of time-served or below Guidelines would amount to a slap on the wrist and send the

message that white collar criminals bear minimal personal and financial consequences if they are caught, and that the court and the government doesn't care if over a dozen working-class New Yorkers were scammed.

IV.     Restitution and Forfeiture

It is undisputed that the defendant received at least $1,337,700 as a result of his fraudulent schemes. Those funds are subject to forfeiture. The defendant has recognized this amount and agreed to its forfeiture as per the plea agreement. Accordingly, the government respectfully requests that the Court issue the final forfeiture order and incorporate the order into the judgment of conviction.

In addition, separate and apart from the forfeiture, which represents the defendant's divestiture of his ill-gotten gains, the defendant is obligated to repay restitution to the victims of his crimes. Under 18 U.S.C. § 3663A, the Court shall impose restitution. The government respectfully submits that the Court should order the defendant to pay the amount of $1,525,175 as restitution pursuant to the Proposed Restitution Order filed under seal.

V.      Conclusion

For the foregoing reasons and based on a balancing of the Section 3553(a) factors, the Court should impose a sentence of imprisonment within the advisory Guidelines range of 41 to 51 months' imprisonment, as well as order the defendant to pay restitution and enter a final forfeiture money judgment.

Respectfully submitted,

JOHN J. DURHAM
United States Attorney

By:   /s/ *John Vagelatos*
John Vagelatos
Assistant U.S. Attorney
(718) 254-6182

cc:   Clerk of the Court (FB) (via ECF and Email)
      Samuel Jacobson, Esq. (via ECF and Email)
      U.S. Probation Officer Frank Thomas Nikolaidis (via ECF and Email)